Robert W. Seeley and Glen McD. Seeley, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Robert W. Seeley, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 19148, 19149. Promulgated February 10, 1950.

*Raymond F. Garrity, Esq.*, for the petitioners.
*William A. Schmitt, Esq.*, and *Pershing W. Bergard, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: Petitioner contends that he was a bona fide resident of a foreign country or countries for the years involved within the meaning of section 116 (a) of the Internal Revenue Code,[1] because:

His status as a resident of Sweden was unimpaired by his absence therefrom during the taxable years, since such absence was an enforced one beyond his control and he at all times intended to, and he did, in fact, return to that country as soon as possible.

He also argues:

In the alternative, petitioner became a resident of England when he went there on June 20, 1942, since his assignment was in line with his "foreign status" employment and was of indefinite duration.

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES—

(1) FOREIGN RESIDENT FOR ENTIRE TAXABLE YEAR.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3) ; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The respondent maintains that neither position is tenable.

The legislative history of section 116 (a) was discussed in *Arthur J. H. Johnson*, 7 T. C. 1040, so we shall not repeat it here. We note from *Walter J. Baer*, 6 T. C. 1195, and *Swenson* v. *Thomas*, 164 Fed. (2d) 783, that the term "residence" as used in section 116 (a) does not mean "domicile," and from *Audio Gray Harvey*, 10 T. C. 183, that "in the absence of any categorical statutory definition of residence, the facts in each case affect the result in that regard." In other words, we must examine the facts presented here to determine whether the granting of the relief sought would be within the purpose of Congress in placing section 116 (a) in the Internal Revenue Code.

We do not find any other case in which the facts or circumstances are easily comparable with those here presented; hence, the several cases involving this question give us scant aid in solution of our problem. However, there is a definition of "sojourn," "residence," and "domicile" contained in Beale, Conflict of Laws, vol. 1, p. 109, sec. 10.3, which gives us some help. It there states as follows:

\* \* \* The difference between three conceptions, that of sojourn, residence, and domicil (not now including domicil by operation of law) is one purely of intention. To become a sojourner, no intention whatever is necessary, merely the fact of personal existence in the place. For residence there is an intention to live in the place for the time being. For the establishment of domicil the intention must be not merely to live in the place but to make a home there.

We shall first consider petitioner's principal contention that he was a resident of Sweden during the years 1943 and 1944. The facts disclose that petitioner arrived in this country from Sweden on February 3, 1941, and that he never returned to that country until August 25, 1945. Approximately six months after his arrival here he gave up his apartment in Stockholm and released his domestic help there. From that time until his return in 1945 he never maintained any abode in Sweden. In June, 1941, after vacationing from February 3, he was assigned to work in the United States. His wife and two children were here with him, where his children continued their education.

In addition petitioner neither reported income nor paid any taxes to any foreign country or countries during the years involved. "\* \* \* Though of course not conclusive, we regard the point of taxes paid one to be weighed in determining foreign residence \* \* \*." *Audio Gray Harvey*, *supra*, p. 190.

We think that those facts show that petitioner, at least from the date that he was assigned work here in June, 1941, which was about the same time he gave up his apartment and domestic help in Sweden, was no longer a bona fide resident of Sweden within the meaning of section 116 (a), *supra*.

Petitioner, in support of his contention, stresses section 29.211–5 of Regulations 111, which, *inter alia*, is set forth in the margin.[2] Petitioner interprets this regulation to mean that a person who has once established a residence must abandon it before he can acquire residence elsewhere, and, since petitioner never abandoned his residence in Sweden, he was a bona fide resident of that country, citing *Federico Stallforth*, 30 B. T. A. 546; affd., 77 Fed. (2d) 548; *L. E. L. Thomas*, 33 B. T. A. 725; *Walter J. Baer, supra*. We believe the facts, as above outlined, dispute petitioner's statement that he never abandoned his residence in Sweden. Some considerable time before the taxable year involved he had given up his living quarters there and severed all ties with that country except to correspond occasionally with the "so-called" acting manager of the Swedish operation of General Motors Overseas Operations.

In addition, section 29.211–2 of Regulations 111 should be read with section 29.211–5. It is there stated than an alien who comes to the United States for an extended stay "becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned."

It may be true, as petitioner contends, that it was impossible for him to return to Sweden, due to circumstances caused by the war, but we think that that argument could also be used in support of respondent's position. If, as petitioner says, it was impossible for him to

---

[2] SEC. 29.116–1. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.— * * * Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211–2, 29.211–3, 29.211–4, and 29–211–5 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual.

\* \* \* \* \* \* \*

SEC. 29.211–2. DEFINITION.—A "nonresident alien individual" means an individual—
(a) Whose residence is not within the United States; and
(b) Who is not a citizen of the United States.
The term includes a nonresident alien fiduciary.

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

\* \* \* \* \* \* \*

SEC. 29.211–5. LOSS OF RESIDENCE BY ALIEN.—An alien who has acquired residence in the United States retains his status as a resident until he abandons the same and actually departs from the United States. An intention to change his residence does not change his status as a resident alien to that of a nonresident alien. Thus, an alien who has acquired a residence in the United States is taxable as a resident for the remainder of his stay in the United States.

return to Sweden, did he not then, from the time it was determined that conditions would not permit his return, fully intend to be a resident of the United States until those conditions were removed? We think, in view of the facts above outlined here, that that question must be answered in the affirmative.

We can find no merit in petitioner's alternative contention that he was a resident of England from June, 1942, through 1943 and part of 1944. This contention is obviously an afterthought. In the claims for refund filed for the years involved he always claimed himself to be a resident of Sweden. In his petition he makes two references to his residing in London temporarily and also reference to the assignment as being temporary.

Petitioner was in England after going there in 1942 only 99 days before he returned to the United States by plane in that same year to report foreign conditions in the British Isles. He remained here approximately 2 months. He made two trips by plane from England in 1943, and again he remained in this country for approximately 2 months on each trip. He returned to England by plane on February 25, 1944, for his last trip to that country. He finally returned to the United States by steamship in June 1944. All in all, petitioner devoted less than 2 years to his mission in England and during that period he was in the United States for approximately 6 months. At all times during the period involved his family was residing in the United States. Hence, we believe he was merely sojourning, not residing, in England during the years involved.

We conclude, therefore, that petitioner was not a bona fide resident of a foreign country or countries during the year involved within the meaning of section 116 (a), *supra.*

During the taxable year 1943 petitioner incurred medical expenses of $1,192.69. The respondent determined that petitioner's corrected net income was $23,674.08. Under section 23 (x) of the code pertaining to the year 1943, the amount of deductible medical expense was limited to the amount that exceeded 5 per cent of net income computed without the benefit of the deduction for medical expense. Five per cent of the amount of the corrected net income as determined by the respondent is $1,183.70. Therefore, since we have held above that respondent's determination as to petitioner's net income for the year 1943 was proper, petitioner's allowable medical deduction for 1943 is the difference between $1,192.69 and $1,183.70, or $8.99, as determined by respondent.

*Decisions will be entered for respondent.*